UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DENNIS COSTA,<br><br>Petitioner,<br><br>v.<br><br>JOSEPH D. MCDONALD, Plymouth County Sheriff, TODD M. LYONS, Acting Director Immigration and Customs Enforcement, Boston Field Office, PATRICIA HYDE, Field Office Director, MICHAEL KROL, HSI New England Special Agent in Charge, KRISTI NOEM, U.S. Secretary of Homeland Security, PAMELA BONDI, U.S. Attorney General, DONALD TRUMP, President of the US,<br><br>Respondents. | Civil Action No. 25-CV-13469-AK |

**MEMORANDUM AND ORDER ON
PETITIONER'S WRIT OF HABEAS CORPUS**

**ANGEL KELLEY, D.J.**

      Before the Court is Petitioner Dennis Costa's Petition for Writ of Habeas Corpus. [Dkt. 1]. Petitioner challenges his continued detention by U.S. Immigration and Customs Enforcement under 8 U.S.C. § 1226(a), asserting, inter alia, that the standard applied by the Immigration Judge during his bond hearing violated the Fifth Amendment's Due Process Clause. For the reasons below, Petitioner's Petition for Writ of Habeas Corpus is **GRANTED**.

**I.   BACKGROUND**

      Petitioner is a sixty-six-year-old citizen of Portugal who has lived in the United States for approximately fifty-six years. [Dkt. 1 ¶ 20]. In 1969, Petitioner's status was adjusted to that of a

Lawful Permanent Resident. [Id. ¶ 21]. In 1991, Petitioner was convicted in Massachusetts state court of the offenses of Rape, Abuse of a Child, and Indecent Assault and Battery on a Child Under 14 Years of Age. [Id. ¶ 22; Dkt. 9 at 3]. Petitioner pleaded guilty and was sentenced to a term of incarceration of ten years. [Dkt. 9 at 3]. Petitioner is a registered Sex Offender in the Commonwealth of Massachusetts. [Id.].

Over thirty years later, on July 29, 2025, the U.S. Immigration and Naturalization Service served Petitioner with a Notice to Appear, and removal proceedings were initiated against him. [Id.]. On August 13, 2025, Petitioner conceded to the factual allegations and charge of removability as contained in the Notice to Appear. [Id.]. On August 14, 2025, an Immigration Judge conducted a bond hearing at Petitioner's request and denied bond after finding that the government had proven that Petitioner was a danger to the community by clear and convincing evidence. [Id. at 3-4]. The Immigration Judge explained in a written version of the decision on September 17, 2025, that the government had the burden of proof in the bond hearing and that the government met its burden by demonstrating that Petitioner was a danger to the community based on the serious nature of his criminal conviction. [Id. at 4]. On August 21, 2025, Petitioner filed a Notice of Appeal of the Immigration Judge's decision, which remains pending with the Board of Immigration Appeals. [Id.].

A now-repealed provision of the Immigration and Nationality Act, Section 212(c), offers a discretionary waiver from deportation for Lawful Permanent Residents who meet certain eligibility requirements. The Supreme Court held in INS v. St. Cyr, 533 U.S. 289, 326 (2001), that, despite its repeal, the waiver remains available for certain noncitizens who pleaded guilty to crimes before April 1997. On September 23, 2025, an Immigration Judge granted a Section

2

212(c) waiver to Petitioner. [Dkt. 1 ¶ 25]. On October 21, 2025, the government appealed this waiver decision, which remains pending. [Dkt. 9 at 4].

On November 6, 2025, the Immigration Judge held a second bond hearing upon Petitioner's request, as Petitioner contended that the Section 212(c) waiver constituted materially changed circumstances. [Id. at 5]. In denying bond, the Immigration Judge assessed whether the government had established that Petitioner posed a flight risk or a danger to the community, ultimately concluding that the government met its burden on the latter based on his criminal history. [Id.]. Petitioner has not appealed this second bond determination. [Id.] Petitioner filed the instant Petition for Writ of Habeas Corpus in this Court on November 20, 2025. [Dkt. 1].

## II.     LEGAL STANDARD

Section 2241 confers jurisdiction on federal district courts to order the release of any person who is held in the custody of the United States in violation of the "laws . . . of the United States" or the United States Constitution. 28 U.S.C. § 2241(c). The burden rests on the person in custody to prove his detention is unlawful. Espinoza v. Sabol, 558 F.3d 83, 89 (1st Cir. 2009) (citing Walker v. Johnston, 312 U.S. 275, 286 (1941)).

## III.    DISCUSSION

Petitioner contends that the test applied by the Immigration Judge at his second bond hearing was incomplete, and that the Due Process Clause requires the government to also prove during 8 U.S.C. § 1226(a) bond hearings that no reasonable alternatives to detention exist that would ensure the safety of the community and secure future appearances in court.[1] [Dkt. 1 ¶¶ 28-

---

[1] Petitioner also contends that the Immigration Judge should have inquired into his ability to pay when setting a bond amount. [Dkt. 1 ¶ 35]. Here, as bond was denied, the Immigration Judge never got to the point of setting a bond amount, and so this question is not properly before this Court. See Brito v. Garland, 22 F.4th 240, 253 (1st Cir. 2021) (finding petitioners did not have standing to raise due process challenge to bond amount analysis where "no [Immigration Judge] ever got to the point of setting a bond amount as a condition for releasing any petitioner").

3

37]. Respondents argue that the Immigration Judge applied the appropriate burden of proof under First Circuit precedent interpreting the Due Process Clause. [Dkt. 9 at 8-10 (citing Hernandez-Lara v. Lyons, 10 F.4th 19, 39 (1st Cir. 2021)]. The Court agrees with Petitioner and finds that by failing to address less restrictive alternatives to detention, the Government failed to provide Petitioner with constitutionally sufficient procedure.

In Hernandez-Lara, the First Circuit held that due process places the burden of proof on the government, not the petitioner, during bond hearings under 8 U.S.C. § 1226(a). 10 F.4th at 39. The extent of that burden is to prove that the petitioner poses a danger to the community by clear and convincing evidence or a flight risk by a preponderance of the evidence. Id. at 41. The First Circuit has not yet squarely addressed whether that analysis must also include alternatives to detention. However, the issue has been considered by other sessions of this court, and prior orders have required Immigration Judges to consider "alternative methods to ensure the safety of the community and [petitioner's] future appearances like GPS monitoring" as part of the assessment of danger and flight risk. Doe v. Tompkins, No. 18-12266, 2019 WL 8437191, at *2 (D. Mass. Feb. 12, 2019), aff'd, 11 F.4th 1 (1st Cir. 2021); see also Brito v. Barr, 415 F. Supp. 3d 258, 271 (D. Mass. 2019), aff'd in part, vacated in part sub nom., Brito v. Garland, 22 F.4th 240 (1st Cir. 2021); Reid v. Donelan, 390 F. Supp. 3d 201, 225 (D. Mass. 2019), aff'd in part, vacated in part, 17 F.4th 1 (1st Cir. 2021). In Doe v. Tompkins, while the judgment was affirmed on appeal, the First Circuit expressly withheld ruling on alternatives to detention because the parties had not raised it. 11 F.4th at 2 ("We therefore consider any challenge to that part of the district court's order in this particular case waived and offer no view concerning it either way."). Similarly, in Brito, the decision was partially vacated on appeal—not on the merits, but on administrative exhaustion grounds, leaving the reasoning regarding alternatives

intact. 22 F.4th at 252.  In Reid v. Donelan, the First Circuit vacated the class certification and found that the district court impermissibly issued declaratory and injunctive relief on a class-wide basis; the court did not analyze the part of the order regarding alternatives to detention. 17 F.4th at 11-12.

      Other district courts, particularly in the Second and Third Circuits, have likewise recognized a due process right to consideration of alternatives to detention in the context of 8 U.S.C. § 1226(a) bond hearings. E.g., Hernandez-Aviles v. Decker, No. 20 Civ. 7636, 2020 U.S. Dist. LEXIS 181925, at *7-8 (S.D.N.Y. Oct. 1, 2020) (holding that "not considering alternatives to detention or ability to pay a bond would run afoul of the protections afforded by the Due Process Clause" and that "if there is a viable option short of detention such that the Government's case for detention is no longer clear and convincing," the Fifth Amendment requires that it be considered before confinement is ordered); Hechavarria v. Whitaker, 358 F. Supp. 3d 227, 241-42 (W.D.N.Y. 2019); Ousman D. v. Decker, No. 20-9646, 2020 WL 5587441, at *9 (D.N.J. Sept. 18, 2020); O.F.C. v. Decker, No. 22 Civ. 2255, 2020 WL 5743522, at *33-35 (S.D.N.Y. Sept. 12, 2022); Roman v. Decker, No. 20-cv-6752, 2020 U.S. Dist. LEXIS 176814, at *3-5 (S.D.N.Y. Sep. 25, 2020).  Our sister courts highlight that the Supreme Court has upheld "preventive detention based on dangerousness only when limited to specially dangerous individuals and subject to strong procedural protections." Hernandez-Aviles, 2020 U.S. Dist. LEXIS 181925, at *5-6 (quoting Zadvydas v. Davis, 533 U.S. 678, 690 (2018)).  And in the context of burdens on other constitutional rights, the Supreme Court has held that "[w]hen a plausible, less restrictive alternative is offered . . . it is the Government's obligation to prove that the alternative will be ineffective to achieve its goals." United States v. Playboy Ent. Grp., Inc., 529 U.S. 803, 816 (2000).

5

The Court aligns with these authorities and finds that, as applied to Petitioner, the Immigration Judge's failure to consider whether alternatives to detention or other less restrictive means could address the risks of danger posed by Petitioner to the community was constitutionally deficient. Detention must "bear[] [a] reasonable relation to [its] purpose," Zadvydas, 533 U.S. at 690 (quoting Jackson v. Indiana, 406 U.S. 715, 738 (1972)), and requiring the Government to consider alternatives helps ensure such decisions are properly tailored to the underlying danger or flight risk concerns. It is possible in this context that a method short of burdening Petitioner's liberty would suffice to address any concerns of danger, and due process requires the Government to at least address why those alternatives might be inadequate.

In the alternative, Respondents urge the Court to dismiss the Petition for failure to exhaust administrative remedies under its common law authority, noting that Petitioner may appeal to the Board of Immigration Appeals. [Dkt. 9 at 10-13]. The Court declines to do so, as Petitioner is currently detained and appeal would extend that detention pending further proceedings. "Exhaustion may be excused" where "a particular plaintiff may suffer irreparable harm if unable to secure immediate judicial consideration of his claim," including situations where "a petitioner will be incarcerated or detained pending the exhaustion of administrative remedies." Gomes v. Hyde, 804 F. Supp. 3d 265, 272 (D. Mass. 2025) (quoting Portela-Gonzalez v. Sec'y of the Navy, 109 F.3d 74, 77 (1st Cir. 1997)). Indeed, this Court has repeatedly declined to dismiss habeas petitions for failure to exhaust under other analogous provisions of the Immigration and Nationality Act where, among other factors, the petitioner is actively detained. E.g., id. at 272-74; Romero v. Hyde, 795 F. Supp. 3d 271, 280 (D. Mass. 2025); Flores-Powell v. Chadbourne, 677 F. Supp. 2d 455, 463 (D. Mass. 2010). Respondent's citation to Brito, where the First Circuit dismissed for exhaustion, is not controlling because the petitioners

in that case were no longer in custody; had they been detained, the analysis might have been different. 22 F.4th at 256 ("And, because none of the petitioners remains detained at present, we see little on the other side of the ledger." (citing Portela-Gonzalez, 109 F.3d at 77)).

Finally, the Court need not reach Respondent's arguments regarding mandatory detention under 8 U.S.C. § 1226(c), as Respondents concede that Petitioner is detained pursuant to 8 U.S.C. § 1226(a) [Dkt. 9 at 14], a separate and independent authority governing discretionary detention. The Court therefore addresses only the standards governing bond hearings under 8 U.S.C. § 1226(a).

As to remedy, Petitioner seeks an order for his immediate release or "any further relief this Court deems just and proper." [Dkt. 1 at 10-11]. The Court agrees with Petitioner that relief is warranted but disagrees as to the appropriate remedy. The Court orders the Immigration Court to conduct a new hearing at which it must consider alternatives to detention. See Gomes, 804 F. Supp. 3d. at 278 ("The First Circuit routinely orders [a new bond hearing] in cases where it has concluded that a noncitizen detained under Section 1226(a) was denied bond because the Immigration Court failed to apply the correct legal standards." (citing Hernandez-Lara, 10 F.4th at 46; Doe v. Tompkins, 11 F.4th at 2; Brito, 22 F. 4th at 256-57)).

IV. CONCLUSION

For the foregoing reasons, Petitioner's Petition for Writ of Habeas Corpus is **GRANTED**. Respondents are **ORDERED** to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within 10 calendar days of this Order, during which Respondent must show that alternatives to detention to ensure the safety of the community would be inadequate. The Parties are **ORDERED** to file a status report within 14 calendar days of this Order stating

7

whether Petitioner has been granted bond, and, if his request for bond was denied, the reasons for that denial.

**SO ORDERED.**

Dated: February 10, 2026                                         /s/ Angel Kelley
                                                                                                     Hon. Angel Kelley
                                                                                                     United States District Judge